# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE



6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770

March 23, 2026

LETTER TO COUNSEL

RE:   *Hector B. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-2171

Dear Counsel:

Pending before this Court are briefs filed by Plaintiff Hector B. and the Social Security Administration and Plaintiff's Reply Brief. (ECF Nos. 12, 14, 15). Upon review of the filings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025).

The Court must uphold the decision of the Social Security Administration ("SSA" or the "Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial-evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will reverse the Commissioner's decision in part and remand the case back to the SSA for further consideration.

## I.   BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on April 18, 2022. (Tr. 23). On August 26, 2022, the Plaintiff also filed a Title XVI application for supplemental security income. (*Id.*). In both applications, the Plaintiff alleges that disability began on October 1, 2021. (*Id.*). The claims were initially denied on June 27, 2023, and upon reconsideration, denied again on August 28, 2024. (*Id.*). On August 29, 2024, Plaintiff filed a written request for a hearing, which was granted. (*Id.*). An Administrative Law Judge ("ALJ") held a telephonic hearing on March 11, 2025. (Tr. 23, 39-67). On April 11, 2025, the ALJ found that the Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (Tr. 20-38). On May 7, 2025, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision dated April 11, 2025, became the final and reviewable decision of the SSA. (Tr. 6-11). *See* 20 C.F.R. § 422.210(a).

*Hector B. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-2171
March 23, 2026
Page 2

## II.    THE LAW

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a). *See, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations (the "Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (alteration in original) (quoting 20 C.F.R. § 416.945(a)(2)). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

At steps one through four, it is the claimant's burden to show that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).

*Hector B. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-2171
March 23, 2026
Page 3

## III.   ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The ALJ first evaluated Plaintiff's claim by following the sequential evaluation process outlined above.  (Tr. 25-33).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2021, the alleged onset date of Plaintiff's disability.  (Tr. 25-26).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease with radiculopathy, occipital neuritis, chronic pain syndrome, and osteoarthritis.  (Tr. 26).  The ALJ found these impairments were severe because these impairments significantly limit the Plaintiff's ability to perform basic work activities as required by SSR 85-28.  (*Id.*).  However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings.  (Tr. 26-27).  Taking into account Plaintiff's severe impairments, the ALJ next assessed the Plaintiff's RFC.  Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  [Plaintiff] can never climb ropes, ladders, or scaffolds.  [Plaintiff] can occasionally reach overhead with the bilateral upper extremities.

(Tr. 27).  The ALJ found that, "[t]o the extent that [Plaintiff's] allegations are inconsistent with [the RFC] assessment, those allegations are not accepted as alleged."  (Tr. 31).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.*).

In assessing Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p."  (Tr. 27).  The ALJ "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c."  (*Id.*).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 30).

The ALJ found that, "[r]egarding activities of daily living, [Plaintiff] reported managing his self-care, taking medications, doing light household chores, driving, riding with others, shopping in stores and by computer, paying bills, socializing in person and by text, reading, watching television, accessing social media, caring for his cat with assistance, and playing the guitar until 2023.  He also reported traveling to Guatemala in early 2024 with his mother to see a doctor."  (Tr. 28 (citing Tr. 237-39, 250-57, 264-70, 284-93)).

*Hector B. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-2171
March 23, 2026
Page 4

The ALJ found that, "[d]uring his March 2022 examination, [Plaintiff] admitted that he could lift light objects without difficulty." (Tr. 29 (citing Tr. 414)).

The ALJ found that Plaintiff had stated that radiofrequency ablation had "flared his pain symptoms in September 2022 and, upon examination, had left cervical paraspinal, facet joint, occipital grove, trapezius, and parascapular tenderness; limited cervical range of motion; slightly decreased left biceps and finger strength; altered left ring and pinky finger sensation; positive left elbow Tinel's sign; and otherwise normal muscle strength and cranial nerves. Despite these findings, his providers continued treating the claimant's symptoms conservatively with medications." (Tr. 29 (citing Tr. 386-87, 389-90, 393)).

The ALJ further found that, "[w]hen establishing orthopedic care in October 2022, [Plaintiff] reported taking Percocet only when his pain was severe and significant, which undermines his testimony of persistent stabbing, radiating, pricking pain." (Tr. 29, 56, 539). The ALJ found that Plaintiff "was referred for comprehensive chronic pain management where he was prescribed Norco and Flexeril as well as PT for dry needling, which he testified to receiving twice monthly with relief." (Tr. 29).

The ALJ also found that Plaintiff "complained of ongoing neck pain thereafter and was found to have cervical and trapezius tenderness and reduced painful cervical spine range of motion that was treated conservatively with medication, bi-monthly steroid and trigger point injections, and dry needling." (Tr. 29-30). The ALJ stated that he had "fully considered [Plaintiff's] ongoing pain complaints, even with receipt [of] conservative treatment, when limiting him to light exertional work with no climbing ladders, ropes, or scaffolds; occasional postural activities; and occasional overhead reaching." (Tr. 30).

The ALJ found the opinion of Plaintiff's primary care physician, Fooroogh Manesh, M.D., to be minimally persuasive because the doctor's opinion was "unsupported by her treatment records which indicate cervical tenderness and painful range of motion, but normal neurological examination of his arms, normal deep tendon reflexes and sensation, and negative Lhermitte's sign (shock-like paresthesia with neck flexion)." (Tr. 30, 845-47). The ALJ also found that Dr. Manesh's opinion was "inconsistent with findings of generally normal gait, strength, sensation, muscle tone, and no saddle anesthesia." (Tr. 31). The ALJ nonetheless considered "Dr. Manesh's finding of decreased neck range of motion due to radiating neck pain from [Plaintiff's] neck to his upper extremities and limited upper extremities range of motion when restricting [him] to light exertion work involving occasional postural maneuvers with no climbing ladders, ropes, or scaffolds and occasional overhead reaching. These limitations are more consistent with the longitudinal record." (*Id.*).

Before making a finding regarding step five, the ALJ conducted a hearing on March 11, 2025. (Tr. 39-67). At the hearing, a vocational expert ("VE") testified, relying upon the *Dictionary of Occupational Titles* and her own experience in the field of vocational rehabilitation. The VE identified the Plaintiff's past relevant work: field technician. (Tr. 61). The ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as the

*Hector B. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-2171
March 23, 2026
Page 5

Plaintiff, with his RFC, would be able to perform Plaintiff's past relevant work. (*Id.*). The VE opined that the hypothetical individual would not be able to perform the past work. (*Id.*).

The ALJ inquired whether other work exists that the hypothetical individual would be able to perform. (Tr. 61). The VE opined that the hypothetical individual could perform light work as a cleaner, routing clerk, or cashier. (Tr. 61-62). The VE also opined that the individual could perform sedentary work as an order clerk, document preparer, or surveillance system monitor. (Tr. 62).

Finally, Plaintiff's counsel asked the VE about whether the hypothetical individual's inability to lift over five pounds would affect the availability of these jobs. (Tr. 65). The VE opined that only the sedentary positions would remain available. (*Id.*). The attorney further asked about breaks and absenteeism. (Tr. 65). The VE opined that an employer would not tolerate an employee's absence of two days or more per month, and being off-task at least fifteen percent of the time. (*Id.*).

At step five, the ALJ ultimately determined that the Plaintiff was not disabled because he could perform work existing in significant numbers in the national economy, e.g., as a cleaner, routing clerk, cashier, order clerk, document preparer, or surveillance system monitor. (Tr. 32).

## IV.   DISCUSSION

On appeal to this Court, Plaintiff advances several arguments. First, that the ALJ erroneously evaluated Plaintiff's subjective complaints because the ALJ (a) erred in characterizing his treatment history as conservative; (b) erred in discounting his subjective complaints based on his use of Percocet; (c) misrepresented the record regarding his statements about the ability to lift and the effectiveness of dry needling; (d) overlooked instructions from physicians for him to avoid activity that aggravated his symptoms and the measures that he took to alleviate his pain; and (e) misrepresented his statements about his activities of daily living. (ECF No. 12, pp. 13-24). Second, substantial evidence does not support the ALJ's reasons for discounting the opinion of Dr. Manesh, Plaintiff's treating physician. (ECF No. 12, pp. 24-27). Third, the ALJ erroneously assessed Plaintiff's RFC by failing to perform a function-by-function assessment of his RFC and by overlooking limitations. (ECF No. 12, pp. 28-30). The SSA counters that: (1) substantial evidence supports the ALJ's determination that Plaintiff's subjective allegations were not fully consistent with the record; (2) substantial evidence supports the ALJ's consideration of Dr. Manesh's opinion; and (3) the ALJ sufficiently explained the assessment of Plaintiff's RFC. (ECF No. 14, pp. 6-15).

I have carefully reviewed the arguments and the record. I find persuasive Plaintiff's argument that the ALJ failed to perform a function-by-function assessment of his ability to perform the physical demands of either light or sedentary work by not addressing his need to lie down. Accordingly, I find that remand is appropriate, for the reasons set forth below.

*Hector B. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-2171
March 23, 2026
Page 6

Pursuant to 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1), a claimant's RFC captures his ability to do physical and/or mental work activities for a sustained period of time, given his limitations.  Put another way, a claimant's RFC is defined as the "most that a claimant can do despite his limitations." *Britt v. Saul*, 860 F. App'x 256, 261 (4th Cir. 2021).  To fashion an RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188); *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). The Fourth Circuit has held that SSR 96-8p requires an ALJ to perform an RFC assessment that evaluates a "claimant's ability to perform the physical functions listed in [the regulations]," namely, "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions [that] may reduce [a claimant's] ability to do past work and other work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (quoting 20 C.F.R. § 416.945(b)).  It is only after such an assessment is performed "may an ALJ express RFC in terms of the exertional levels of work" that a claimant is capable of performing.  *Monroe*, 826 F.3d at 179.

Next, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion.  *Thomas*, 916 F.3d at 311.  If an RFC analysis lacks any of these components, the court is precluded from performing meaningful review.  *Id*.  The Fourth Circuit has made clear that the second component, the ALJ's logical explanation, "is just as important as the other two." *Id*.; *see Petry v. Comm'r, Soc. Sec. Admin.*, Case No. SAG 16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (ALJ should build "an accurate and logical bridge from the evidence to his conclusion"); *Perry v. Berryhill*, 765 F. App'x 869, 871 (4th Cir. 2019) (decision "must include a narrative discussion describing how the evidence supports each conclusion").

In *Dowling,* the Fourth Circuit held that the ALJ erred in the RFC analysis performed. First, the ALJ erred by not using SSR 96-8p or other appropriate regulations when assessing the claimant's RFC.  Instead, the ALJ used the incorrect legal framework and incorrectly focused only on the intensity and persistence of claimant's symptoms, and "the extent to which the alleged severity of those symptoms is supported by the record."  986 F.3d at 387.  This kind of "symptom evaluation" is a different kind of analysis that SSR 96-8p and other regulations require for a proper RFC assessment.  Second, the ALJ erred by first finding that the claimant had the RFC to perform sedentary work before performing a function-by-function analysis of how the claimant's impairments affected his ability to work.  The *Dowling* court found that the ALJ's methodology of reaching a predetermined conclusion and then looking for evidence to support it was an inappropriate, out-of-order RFC assessment, per *Thomas*.  *Id*. at 388.  Third, despite ample evidence in the record that the claimant needed to work near a restroom and take frequent breaks, the ALJ failed to analyze that need to take breaks and whether it impacted her ability to work.  *Id*. at 389.  In sum, the Fourth Circuit found that these errors required reversal of the district court's affirmance of the ALJ's decision, and a remand for further administrative proceedings.

In this case, the ALJ erred in finding that, "[t]o the extent that [Plaintiff's] allegations are inconsistent with [the RFC] assessment, those allegations are not accepted as alleged."  (Tr. 31).

*See Monroe*, 826 F.3d at 187 (expressing the RFC before analyzing claimant's limitations function by function creates danger that adjudicator will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do; by expressing claimant's RFC first and only then concluding that the limitations caused by his impairments were consistent with that RFC, the ALJ made this very error).

In addition, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease with radiculopathy, occipital neuritis, chronic pain syndrome, and osteoarthritis.  (Tr. 26).  Thus, the ALJ was required to cite to and analyze Plaintiff's RFC consistent with SSR 96-8p, *Dowling*, and *Thomas*.  Upon reviewing the ALJ decision in this case, the ALJ made passing reference to "residual functional capacity," and what Plaintiff can do "despite limitations from his impairments." (Tr. 25).  However, the ALJ did not make any explicit findings about Plaintiff's ability to "sit, stand, walk, lift, carry," or discuss whether his abilities in this regard impacted his ability to work.  (Tr. 27).  Per *Dowling,* I find that this constitutes error.  In addition, the ALJ first found that Plaintiff had the RFC to perform "light work," and then the ALJ dedicated several pages to identifying medical evidence that supported this conclusion.  (Tr. 27-31).  Per *Dowling* and *Thomas*, this was also erroneous.

Plaintiff contends that the ALJ failed to explain how he considered his need to lie down periodically or rest in assessing the Plaintiff's RFC.  (ECF No. 12, p. 29 (citing Tr. 56, 286, 404, 507).  Here, the ALJ did conduct a "symptom evaluation" (Tr. 27-30); however, this is a "separate and distinct inquiry" from a proper RFC assessment.  *Dowling*, 986 F.3d at 387.  The law is clear that the purpose of the RFC is to assess an individual's ability to do sustained work on a regular basis (eight-hour workday, on task) despite his mental or physical impairments.  SSR 96-8p; *see Thomas*, 916 F.3d at 311; *Dowling*, 986 F.3d at 387.  Given that the ALJ found Plaintiff's chronic pain syndrome to be severe, the ALJ needed to clearly articulate how this impairment translated only into the RFC limitation of performing "light work" limited to, among other things, "occasionally reach[ing] overhead with the bilateral upper extremities." (Tr. 27).  *See Dowling*, 986 F.3d at 389 (ALJ's error required remand where, despite ample evidence in the record that the claimant needed to work near a restroom and take frequent breaks, the ALJ failed to analyze whether these severe limitations impacted her ability to work); *see also Muir v. Astrue*, Case No. SKG 11-2041, 2013 WL 140779, at *9 (D. Md. Jan. 3, 2013) (finding Plaintiff's headaches would prevent him from performing a full range of sedentary work on a sustained basis).

The Court finds instructive *Woods v. Berryhill*, 888 F.3d 686 (4th Cir. 2018).  In *Woods*, the ALJ concluded that the plaintiff could perform "medium" work.  In reviewing the ALJ's decision, the court stated that the ALJ "summarized evidence that he found credible, useful, and consistent." *Id.* at 694.  However, the court found the ALJ's decision lacking as it did not describe how the cited evidence supported the various limitations contained within the RFC. *Id.*  The court found that the decision was not supported by substantial evidence because "the ALJ never explained how he concluded—*based on this evidence*—that [the plaintiff] could actually perform the tasks required by 'medium work,' such as . . . standing or walking for six hours.  The ALJ therefore failed to build an 'accurate and logical bridge' from the evidence he recounted to his conclusion about [the plaintiff's RFC]." *Id.* (internal citation omitted).  In the absence of a

*Hector B. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-2171
March 23, 2026
Page 8

narrative discussion, the court found that remand was appropriate. *Id.* at 695; *see Monroe*, 826 F.3d at 189 (an ALJ's decision must include a discussion connecting the evidence to each conclusion); *accord Dowling*, 986 F.3d at 388 (determining that "the ALJ did not properly assess the extent to which [the plaintiff's] sitting problems impacted her ability to work. [The plaintiff] has argued throughout her administrative and judicial proceedings that her [inflammatory bowel disease] and anal fissure cause her to experience discomfort when she sits for a prolonged period of time. But the ALJ apparently concluded that [the plaintiff] was not restricted in her ability to sit, as he did not indicate that her RFC was limited because of those problems. This conclusion should have been the result of an analysis that was separate from the ALJ's appraisal of [the plaintiff's] ability to perform other functions, and should have been accompanied by 'a narrative discussion describing' the evidence supporting it. The ALJ's evaluation of [the Plaintiff's] ability to sit was lacking in both respects. The ALJ never specifically discussed the extent to which [the plaintiff's] alleged sitting problems impacted her ability to perform sedentary work. The ALJ could not have supported a conclusion in this regard through a narrative discussion concerning the relevant evidence because he reached no such express conclusion in the first instance. In fact, the ALJ barely mentioned [the plaintiff's] sitting problems in his decision, and discussed them only when rattling off a laundry list of her many impairments and functional restrictions. This grouping of [the plaintiff's] sitting limitations with her other impairments and restrictions is a far cry from the 'function-by-function analysis' the ALJ was required to conduct." (internal citation omitted)).

In sum, because the ALJ failed to build an "accurate and logical bridge" between the evidence and his RFC assessment, this Court cannot find that his decision is supported by substantial evidence. On remand, the ALJ should provide a proper function-by-function analysis that builds "an accurate and logical bridge" between the evidence and the Plaintiff's RFC.

Because this case is being remanded on other grounds, this Court will not address Plaintiff's remaining arguments, including his contentions that the ALJ erred in evaluating his subjective complaints and in evaluating the opinion of his primary care physician. (ECF No. 12, pp. 13-27). *See Nancy G. v. Kijakazi,* Civ. No. GLS 20-3440, 2022 WL 363824, at *5 (D. Md. Feb. 4, 2022). On remand, however, the ALJ should address these arguments.

## V.    CONCLUSION

For the reasons set forth above, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled and, therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

*Hector B. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-2171
March 23, 2026
Page 9

     Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such.  A separate Order follows.


     Sincerely,


             /s/
     The Honorable Gina L. Simms
     United States Magistrate Judge